GALLOWAY v. SEWELL.

Opinion delivered February 25, 1924.

1. WILLS—USE OF A THING.—Generally the use of a thing does not mean the thing itself, but that the user is to enjoy, hold, occupy or have in some manner the benefit thereof.

2. LIFE ESTATES—WILL GIVING WIFE USE OF PROPERTY FOR LIFE.— A will devising and bequeathing all of testator's property to his wife during her life "to have and to use, manage, control, sell and enjoy for said term," giving her power to sell the property, and directing that she be not held to account for disposition of the property used or sold during her life, the remainder to go to testator's legal heirs, entitled the wife to hold and occupy the real estate, and have all money during her life, and to receive the rents and interest, whether needed for her maintenance or not, whatever was left of the rents or interest at her death going to her legal heirs, and testator's administrator or the remainderman could not require her administrator to account for anything more than the principal of money received under the testator's will.

3. EXECUTORS AND ADMINISTRATORS—ACCOUNTING.—In a suit by a husband's administrator against the wife's administrator for accounting as to property received by the wife from the husband's estate, it appearing that moneys of the wife were a part of the property so received, defendant was not entitled to credit

for interest on such moneys up to the husband's death, in the absence of proof that she received any interest.

4. EXECUTORS AND ADMINISTRATORS—COST OF TOMBSTONE.—In the case of solvent estates, the necessary cost of a reasonable tombstone placed at the grave of a deceased person is properly classed as funeral or administration expenses.

Appeal from Pope Chancery Court; *W. E. Atkinson,* Chancellor; reversed.

### STATEMENT OF FACTS.

R. K. Sewell, administrator of the estate of J. W. Dickey, deceased, brought this suit in equity against W. A. Galloway, administrator of the estate of Martha L. Dickey, deceased, for an accounting between the parties of the funds of the estate of which R. K. Sewell is administrator, which are in the hands of the defendant, and that plaintiff have judgment against the defendant for the amount found to be due.

J. W. Dickey and Martha L. Dickey were husband and wife, but had no children. J. W. Dickey died testate in Pope County, Arkansas, on the 1st day of October, 1907, owning both real and personal property in said county. The construction of his will is involved in this suit, and it reads as follows:

"The last will and testament of James W. Dickey.

"Know all men by these presents: That I, James W. Dickey, of Atkins, in the county of Pope and the State of Arkansas, being in good bodily health and of sound mind and memory, do make and publish this, my last will and testament, hereby revoking all former wills by me heretofore made:

"This is to say: It is my will that all my just debts be paid by my executrix, hereinafter named, out of my estate, as soon after the probate of this will as conveniently may be done. I hereby constitute and appoint my beloved wife, Martha L. Dickey, to be sole executrix of this my last will and testament, and I desire that she be permitted to execute the same, without bond, at any time.

"I give, devise and bequeath unto my said wife, Martha L. Dickey, all my property of every kind what-

soever, and wherever situated, real, personal and mixed, for and during the term of her natural life, to have and to use, manage, control and enjoy for the said term; and from and after the decease of my said wife, I direct that the residue and remainder of my estate, of every kind whatever, and wherever located, shall descend to my legal heirs at law, according to the statute in such cases made and provided.

"It is my will and I direct that my said wife, Martha L. Dickey, be permitted to manage, direct and control and use and enjoy all of my said property during the said term of her natural life, and she is hereby given full power and authority to sell and dispose of any of said property, and to make proper deeds therefor, when, in her judgment, it will be for the best interest of my said estate, and I hereby direct that she shall never be held to account for the disposition of any part of said property which she may use, sell or dispose of during the continuance of said term.

"In testimony whereof I hereof set my hand and publish and declare this to be my last will and testament, in the presence of the witnesses named below. This the 18th day of December, 1901.

"JAMES W. DICKEY."

The will was duly probated, and Martha L. Dickey qualified as executrix under the will.

J. W. Dickey and Martha L. Dickey were married in 1882. At the date of her marriage Martha L. Dickey had $800, which she had received from her father's estate in 1876. At the date of his death J. W. Dickey had on deposit in the Merchants' & Farmers' Bank, Atkins, Ark., $81.90, and had on deposit in the Bank of Atkins $484. After his death the amount of these deposits was transferred to the account of Martha L. Dickey. On the 25th day of October, 1907, she placed in the Merchants' & Farmers' Bank $3,350 in currency and gold, and on the same day she placed to her credit in the Bank of Atkins the sum of $6,000 in cash. At the date of his death J. W. Dickey owned a farm near Atkins and two houses in

Atkins. After his death Martha L. Dickey took charge of all of his property. During the World War she bought $3,000 worth of Liberty bonds and $175 worth of war savings stamps. She erected a monument over her husband's grave at a cost of $400.

At the time of the death of J. W. Dickey he had an insurance policy for $2,000, in which his wife was named as the beneficiary. She collected the amount of said policy, and placed it in the bank to her account. She enjoyed the use of the real and personal property so devised to her until the date of her death on November 20, 1920.

Other facts will be stated or referred to in the opinion.

It was the opinion of the chancellor that Martha Dickey was entitled to the use and enjoyment of all the property devised to her in the will of her husband for her support during her natural life, but that she should account for all of that part of it which had not been disposed of, including the rents from the real estate and the interest which she had received from the money. The total amount found to be due, upon the accounting, was $14,371.62, and the administrator of the estate of Martha L. Dickey, deceased, was ordered to turn that amount over to the administrator of the estate of J. W. Dickey, deceased.

To reverse that decree W. A. Galloway, administrator of the estate of Martha L. Dickey, deceased, has prosecuted an appeal to this court.

*J. T. Bullock, R. B. Wilson* and *Hays, Priddy & Hays.* for appellant.

There is no presumption of law or fact to support the finding that the money deposited by Mrs. Dickey was the property of her husband. The law does not presume that money in the possession of a wife belonged to her husband instead of her. 42 Ark. 62; 24 Fed. 666. The fact of possession suggests ownership. 1 Jones' Comm. on Ev., § 74, p. 354. The presumption of a gift from the husband to the wife is stronger than that she was wrong-

fully holding the money of her husband. 116 Ark. 152. To establish a resulting trust the proof must leave no well-founded doubt on the subject. 118 Ark. 146. Appellee is precluded from relief by laches, having waited during a long period, and until after the death of the only witness who knew the facts, to assert his claim. Am. & Eng. Enc. Law, vol. 18, p. 106; 2 Wall. 87; 95 Ark. 178. Mrs. Dickey, under the will, had a right to spend the money left by her husband. 112 Ark. 527.

*Robert Bailey* and *Jack Smallwood, Jr.,* for appellee.

If Mrs. Dickey had any separate funds, she mixed them with the funds belonging to the estate of her husband. One who mixes trust funds with his own money, the whole will be treated as trust property, unless he is able to distinguish what is his. 13 L. R. A. 325; 83 Mo. 210; 57 Mo. 531; 58 Ala. 582; 8 L. R. A. 788; 11 Paige 520; 3 W. Va. 126; 104 U. S. 54; L. R. A., 1916-A, C-1; 58 L. R. A. 385; 52 L. R. A. 858; 26 A. L. R. 7; 95 Me. 353. Mere possession of money of a deceased person cannot raise any presumption of a gift during deceased's life. 142 Ark. 308; Enc. of Evidence, vol. 6, p. 830; 30 C. J., § 299; 97 Ark. 69; 93 Ark. 548. When a gift is claimed, it must be proven by strong and clear evidence. 42 Hun 161; 42 N. J. Eq. 352; 2 Edw. Ch. 337; 233 Pa. St. 316. A possession which is as consistent with agency as with gift must indicate agency instead of gift. 75 Me. 521; 80 Me. 575; 81 Me. 243; 90 Me. 382; 38 L. R. A. 193; 110 Me. 35; 93 Me. 291; 111 Me. 25; 261 Mo. 126; 61 N. H. 541. A life tenant in possession is not entitled to credit for money paid out for taxes, improvements and other expenses. 17 R. C. L. 535, § 25; 13 L. R. A. (N. S.) 514; note 32 L. R. A. 736; 12 R. C. L. 641, § 31; 17 R. C. L. 641, § 31; 137 Ark. 140.

HART, J., (after stating the facts). The third paragraph of the will of J. W. Dickey gave Martha L. Dickey, his wife, full power and authority to sell and dispose of any of the property of his estate and to make proper deeds therefor when, in her judgment, it would be for the best interest of said estate.

In the same clause the will directs that she shall never be held to account for the disposition of any of said property which she may use, sell, or dispose of during her natural life.

Conceding that this clause of the will gave her the power, as life tenant, to convey the estate absolutely and thereby defeat the estate of the remainderman, as decided in *Archer* v. *Palmer,* 112 Ark. 527, it need only be said that it does not appear from the record that she disposed of any part of her husband's estate, and consequently she did not exercise or attempt to exercise the power thus conferred upon her by the will.

This brings us to a consideration of what estate was vested in her under the will and what right she had in its use.

The second paragraph of the will devises and bequeaths to Martha L. Dickey all the property of every kind of the testator, for and during the term of her natural life, "to have and to use, manage, control and enjoy for said term." The same clause directs that the remainder of the estate of the testator should descend to his legal heirs.

In the third clause of the will the testator again directs that Martha L. Dickey be permitted "to manage, direct, control, use and enjoy all of his property during her natural life."

As a general rule the use of a thing does not mean the thing itself, but means that the user is to enjoy, hold, occupy, or have in some manner the benefit thereof. If the thing to be used is in the form or shape of real estate, the use thereof is its occupancy or cultivation, etc., or the rent which can be obtained for its use. If it is money or its equivalent, generally speaking, it is the interest which it will earn. *Blanton* v. *First National Bank,* 142 Ark. 404; and *Special School District No. 5* v. *State,* 139 Ark. 263, and cases cited; 39 Cyc. 845, and cases cited; 29 Amer. & Eng. Cyc. of Law, 2 ed. p. 444, and cases cited; *Crane* v. *Van Dyne,* 9 N. J. Eq. 259; *Cross* v. *Hoch,* 149

Mo. 325; *Rountree* v. *Dixon,* 105 N. C. 350; *Russell* v. *Andrews,* 120 Ala. 222; and *Warren* v. *Webb,* 68 Me. 133.

Under this rule Martha L. Dickey was entitled to hold and occupy the real estate devised to her for her natural life and to receive the income or rent therefrom. She was also entitled to the money received from her husband's estate and to the interest on it during her natural life. It did not make any difference whether she used or needed the rents from the real estate or the interest on the money for her support and maintenance. She was entitled to receive the same, and was not required to account for it, under her husband's will. At her death, whatever was left of the rents from the real estate or the interest from the money became a part of her estate, and, under our law of descents and distributions, went to her legal heirs. Her administrator could only be required to account to the administrator of her husband's estate, or to the remaindermen under the will, for the principal of the money she received under the terms of her husband's will.

It is not claimed that she received any personal property under her husband's will, except money. If there was any small amount of personal property left at her husband's death, it was doubtless consumed by use under the rule stated in *Fields* v. *Kline,* 161 Ark. 418.

As we have already seen, Martha L. Dickey did not attempt to dispose of any of the real or personal property which she received under the will. The basis of this suit is to require an accounting from her administrator of the personal property which she received under her husband's will, and which was undisposed of at the date of her death. The proof shows that, at the date of her husband's death, he had on deposit in one bank $81.90 and in another $484, making a total of $565.90. In a few days after his death she placed on deposit in a bank two sums totaling $9,350.

It was not shown that she had any money of her own, except $800 which she had received from her father's estate. It is suggested that she should be entitled to

interest on this amount from the time she received it until her husband's death, and that the interest should be added to the principal and the whole sum counted as belonging to her. If she had lent out the money and received interest on it, of course, it would belong to her, but there is no proof in the record that she ever put her money out at interest, and we cannot rely upon surmise or conjecture in the matter. Before she would be entitled to interest, she is required to prove that she had received interest, and the administrator of her estate has failed to meet the burden of proof in this respect. She did expend, however, $400 in erecting a monument over her husband's grave. His will directed that all his just debts be paid by his executrix. The monument on his grave was a proper charge against his estate. Credit should be allowed for a reasonable expenditure for a tombstone or monument for decedent. 24 C. J. 93, and cases cited.

A reading of the cases cited shows that it is quite generally held in the case of solvent estates that the necessary cost of a reasonable tombstone placed at the grave of a deceased person is properly classed as funeral expenses, or expenses of administration, which may be allowed to an executor or administrator in settlement of his account. Therefore in arriving at the sum which Martha L. Dickey received from her husband's estate, under his will, the amount of money which she owned, $800, and the $400 for the monument, making a total of $1,200, should be deducted from the money which she deposited in the bank. One thousand two hundred ($1,200) dollars taken from $9,350 leaves $8,150. To this amount should be added $565.90 on deposit by her husband when he died, making a total of $8,715.90, which she received under her husband's will and which went into the hands of her administrator at her death.

It is fairly inferable from the evidence that she had no money or property except the $800, as above stated, and it is also fairly inferable that she received the rest of the money, which she put into the bank shortly after her husband's death, from his estate. The result of our

views is that the chancellor properly held her accountable for the amount of money which she received from her husband's estate, and which, after deducting all proper allowances, we find to be the sum of $8,715.90.

J. W. Dickey had a policy of insurance in which Martha L. Dickey was the beneficiary. She collected this policy, and was entitled to it. It does not appear, however, that this was any part of $8,350 or the $6,000 deposited in bank. Both these deposits bear date of Oct. 25, 1907, and the proceeds of the life policy bear date of Jan. 3, 1908.

The learned chancellor erred in requiring her to account for any part of the income or rents derived from the real estate or interest on the money of her husband which she had loaned out.

It follows that the decree will be reversed, and the cause remanded with directions to render a judgment in favor of the plaintiff against the defendant for said sum of money, together with 6 per cent. interest thereon from the date of the decree in the court below, which was on the 12th day of October, 1922.

It is further ordered that the costs in the court below and of this appeal be paid by the plaintiff.